**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CARL MARTIN KNISLEY-DESMOND,

     Plaintiff,

v.                                                                     Case No. 8:26-cv-1340-KKM-TGW

KIMBERLY SHARPE BYRD and
NIKKI ALVAREZ-SOWLES,

     Defendants.

_____

**<u>ORDER</u>**

Pro se plaintiff Carl Martin Knisley-Desmond sues Florida Circuit Court

Judge Kimberly Sharpe Byrd and the Clerk of Court for Pasco County, Florida,

Nikki Alvarez-Sowles—both in their official capacities. Knisley-Desmond

brings, under 42 U.S.C. § 1983, claims for due process violations (Count I) and

first amendment retaliation (Count II). Am. Compl. (Doc. 10) ¶¶ 33–45. He also

asserts a claim under the Americans with Disabilities Act (Count III), and

under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (Count IV). *Id.*

¶¶ 46–57.

In relief, Knisley-Desmond does not ask for damages. Instead, he

primarily seeks "the obvious irritant to state-federal relations of an injunction

against state officials." *Allegheny County v. Frank Mashuda Co.*, 360 U.S. 185,

190 (1959). Specifically, he wants (1) declaratory judgments that a sanctions order entered on April 11, 2025, in state court by Judge Byrd, and the resulting removal of his access to Florida's ePortal system for filing are unlawful; (2) permanent injunctions against Alvarez-Sowles preventing her "from enforcing the automated ePortal block" and requiring her to accept Knisely-Desmond's "hard-copy filings"; (3) a permanent injunction against both defendants that requires that they conduct "individualized review before applying any filing prohibition to" Knisley-Desmond; (4) "[a]n order requiring the preservation of all records related to suppressed docket entries" in various state court cases; (5) and attorney's fees and costs. *See* Am. Compl. at 16–17 (Prayer for Relief).

Knisley-Desmond's dispute with the defendants arose on April 11, 2025, when Judge Byrd entered a sanctions order against Knisley-Desmond in an action before her. Sanctions Order (Doc. 1-2) at 3. Judge Byrd did so after Knisley-Desmond "inundated the Court with new cases and filings and . . . has failed to comply with court rules and procedures." *Id.* at 2. Judge Byrd found that Knisley-Desmond "excessively communicates with the Court, demanding hearing time or other expedited judicial action, despite the Court explaining on numerous occasions that such action is not warranted . . . ." *Id.* Nonetheless, Knisley-Desmond "repeatedly filed non-emergency motions as emergencies" and "repetitive motions seeking the same or similar relief that was previously denied." *Id.* When communicating with court personnel, Knisley-Desmond

"included threatening and unprofessional language unnecessary to the presentation of his allegations and causes of action." *See id.*

The sanctions order imposed a prefiling injunction that prohibits Knisley-Desmond from filing papers in certain identified cases and in future cases, or from filing new civil actions unless the papers or pleadings are signed by a member of the Florida Bar. *Id.* at 2–3. The sanctions order applies across Pasco County and instructs Alvarez-Sowles to not docket any papers or pleadings from Knisley-Desmond that are not signed by a member of the Florida Bar. *Id.* at 3. There is one exception—Knisley-Desmond can file a notice of appeal. *Id.*

Prior to initiating this action, Knisley-Desmond appealed to Florida's Second District Court of Appeal, which dismissed the appeal on August 20, 2025,[1] and, on May 4, 2026, denied Knisley-Desmond's motions to reinstate the appeal.[2] *See* Am. Compl. ¶ 31; 2d DCA Order (Doc. 1-2) at 9; Pasco Cnty. Case No. 2025-ca-1008 (Doc. 49). Knisley-Desmond filed his initial complaint in this

---

[1] Thereafter, Knisley-Desmond had through September 19, 2025, to appeal to the Florida Supreme Court, which he did not do. *See* FLA. R. APP. P. 9.120(b).

[2] To the extent that any of Knisley-Desmond's claims rely on allegations regarding the defendants' actions during a temporary stay issued by the Second District Court of Appeal, *see* Am. Compl. ¶¶ 23, 52, those claims are moot by the simple fact that the appeal has been dismissed and the stay lifted. *See* Pasco Cnty. Case No. 2025-ca-1008 (Doc. 49).

Court on May 6, 2026. *See* Compl. (Doc. 1). Repeated "emergency" or "time-sensitive" filings and requests for temporary restraining orders or preliminary injunctions have followed. *See* (Docs. 2, 17, 31–34). I directed Knisley-Desmond to establish why I should not dismiss this case under *Rooker-Feldman* or *Younger*. (Doc. 23). He responds. Resp. (Doc. 36).[3]

For the reasons explained below, both doctrines bar Knisley-Desmond's action.

*Rooker-Feldman* bars "cases in which federal litigants seek reversal of state court decisions." *Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1285 (11th Cir. 2018). A claim that was "actually adjudicated by a state court" or that is " 'inextricably intertwined' with a state court judgment" is barred. *Id.* at 1286. The relief sought under each claim is important to the analysis. *See Behr v. Campbell*, 8 F.4th 1206, 1214 (11th Cir. 2021). This is because a claim is inextricably intertwined "if it asks to effectively nullify the state court judgment." *Target Media Partners*, 881 F.3d at 1286. A pending appeal of the relevant state court judgment will preclude the application of *Rooker-Feldman*. *See Nicholson v. Shafe*, 558 F.3d 1266, 1279 (11th Cir. 2009). But "if a lower state court issues a judgment and the losing party allows the

---

[3] Knisley-Desmond filed two responses, (Docs. 36–37), but they appear to be substantively the same.

time for appeal to expire, then the state proceedings have ended." *Id.* at 1275 (citation modified).

As a threshold matter, a sanctions order like the one against Knisley-Desmond constitutes a state court judgment or decision that falls within the bounds of *Rooker-Feldman*. Under Florida law, sanctions orders are "final orders [that are] appealable prior to the entry of final judgment." *See Smith v. State*, 902 So. 2d 179, 181 (Fla. 3d DCA 2005) (holding that, because judicial labor as to sanctions ends with the entry of the order, sanctions orders constitute a final order that must be appealed within thirty days of the entry of the order); *Ochalek v. Rivera*, 232 So. 3d 1050, 1051 (Fla. 4th DCA 2017) (considering appeal of sanctions order alone); *see also Stolfo v. KinderCare Learning Ctrs., LLC*, 727 F. App'x 861, 865 (7th Cir. 2018) (per curiam) ("Under the *Rooker-Feldman* doctrine, we cannot overturn the state courts' underlying sanctions judgments."); *Lepelletier v. Tran*, 633 F. App'x 126, 127 (4th Cir. 2016) (per curiam) ("As the district court properly concluded, the plaintiff's claims were effectively a collateral attack on a state court sanctions ruling, and thus barred by the *Rooker–Feldman* doctrine." (citation modified)). Moreover, Knisley-Desmond does not argue that such an order cannot be subject to *Rooker-Feldman*, just that the doctrine does not apply under the specific circumstances of his action. *See* Resp. at 3–7. He is incorrect.

Though Knisley-Desmond insists that he does not ask me to "reverse, annul, vacate, or modify any state-court judgment" or "seek appellate review of the [sanctions order]," Resp. at 5, all his claims seek one thing: to effectively nullify the sanctions order, *see* Am. Compl. ¶ 2 ("Plaintiff seeks exclusively prospective declaratory and injunctive relief pursuant to [each of his causes of action]."). It does not matter that he asserts a variety of causes of action in his efforts—including two claims that he is being discriminated against for apparent disabilities by not being allowed to proceed pro se and file papers using the Florida ePortal.[4] *See* Am. Compl. ¶¶ 46–57. They are each a "disguised claim[]" that seeks appellate review of, or a collateral attack on, the sanctions order. *See Behr*, 8 F.4th at 1211. Rather than ask that I declare him

---

[4] Upon a review of the robust factual record that Knisley-Desmond has established through his many attachments and exhibits, which include the sanctions order as well as his communications with the state court, I separately lack subject matter jurisdiction over his ADA and Rehabilitation Act claims (Counts III and IV), which "clearly appear[] to be immaterial" and are "wholly insubstantial and frivolous" because they lack "plausible [factual] foundation" for the idea that the sanctions order and resulting ePortal block were issued because of his disabilities. *See Resnick v. KrunchCash, LLC*, 34 F.4th 1028, 1034–35 (11th Cir. 2022) (citation modified). To the extent that Knisley-Desmond's ADA claim is premised on the idea that the ePortal block excludes him from accessing the court because his disabilities prevent him from traveling to the court to participate in the litigation in person, this, too, is frivolous. *See* Am. Compl. ¶ 50. First, the sanctions order would still prevent the Clerk from accepting any electronic filings he made that were not signed by a member of the Florida Bar, and Knisley-Desmond does not represent that he has found any member of the Bar who is willing to sign his filings. Second, he has repeatedly traveled to this Court to file in person in this action. Thus, access to the ePortal, alone, would not change Knisley-Desmond's ability to litigate pro se.

the winner of the game, so to speak, Knisley-Desmond seeks the return of his opponent's score to zero.

Knisley-Desmond claims that the source of his injury is not "a state order" and is instead the "ongoing implementation of filing barriers by state officers." Resp. at 5. He ignores, of course, that the "filing barriers" exist because of a state court injunction against him. The undeniable fact is that, were he to receive the relief that he requests in this action, he would be able to file new papers and pleadings in Pasco County, which he cannot do currently because of the sanctions order. *Rooker-Feldman* bars this action.

*Younger* abstention "counsels against federal relief" when there is "the prospect of undue interference with state proceedings." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). It applies in three limited circumstances: "ongoing state criminal prosecutions," "certain civil enforcement proceedings," and "pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 78 (citation modified). This third category includes interference with a state court's civil contempt proceedings. *See Juidice v. Vail*, 430 U.S. 327, 335–36 (1977) ("We think the salient fact is that federal-court interference with the State's contempt process is an offense to the State's interest." (citation modified)). "When a federal lawsuit overlaps with one of these types of state proceedings, and the federal court is asked to interfere in the state proceeding,

the federal court must consider whether the three factors enumerated in *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 432 (1982), are present: First, is the state proceeding 'ongoing' at the same time as the federal one? Second, does the state proceeding implicate an 'important state interest'? And third, does the state proceeding provide an 'adequate opportunity' to raise the federal claim?" *Leonard v. Alabama State Bd. of Pharmacy*, 61 F.4th 902, 908 (11th Cir. 2023) (citing *Tokyo Gwinnett, LLC v. Gwinnett County*, 940 F.3d 1254, 1268 (11th Cir. 2019)). Even when the *Middlesex* factors are met, there might be extraordinary circumstances that call for a federal court to refuse to abstain. *See id.* Those circumstances are evidence that the state proceedings are motivated by bad faith, irreparable injury would occur, or if there is no adequate state forum where the constitutional issues can be raised. *See id.*

Knisley-Desmond argues that none of the three categories applies here. *See* Resp. at 9–11. He is wrong. A sanctions order that protects state courts from "inundat[ion]" with "new cases and filings" from a litigant that "fail[s] to comply with court rules and procedures," repeatedly "file[s] non-emergency motions as emergencies" and "motions seeking the same or similar relief that was previously denied" is an order uniquely in furtherance of state courts' ability to perform their judicial function. *See* Sanctions Order at 2; *Macleod v. Bexley*, 730 F. App'x 845, 848 (11th Cir. 2018) (per curiam) (concluding that a

state court order barring a plaintiff from further pro se filings was an order uniquely in furtherance of the state courts' ability to perform their judicial functions); *Dandar v. Church of Scientology Flag Serv. Org., Inc.*, 24 F. Supp. 3d 1181, 1186–87, 1195, 1198 (M.D. Fla. 2014), *aff'd*, 619 F. App'x 945, (11th Cir. 2015) (per curiam) (holding that *Younger* required dismissal of claims seeking declaratory judgment and injunctive relief enjoining a state court from sanctioning an attorney because to do so would impact civil proceedings involving orders uniquely in furtherance of the state court's ability to perform its judicial functions); *cf. Est. of Brennan ex rel. Britton v. Church of Scientology Flag Serv. Org., Inc.*, 645 F.3d 1267, 1277 (11th Cir. 2011) (reversing a federal court injunction of enforcement of state court sanctions on grounds that doing so violated the Anti-Injunction Act, without having to decide whether the injunction also violated *Younger*). The principles underlying *Juidice* apply equally in the sanctions context. The sanctions power is intertwined with the contempt power, and the two are instrumental to a court's ability to "vindicate[] the regular operation of its judicial system." *Juidice*, 430 U.S. at 335. Both lie "at the core of the administration of a State's judicial system," and "federal-court interference" with either is "an offense to the State's interest." *Id.* at 335–36 (citation modified).

Turning to the *Middlesex* factors, Knisley-Desmond is incorrect that there are no ongoing state proceedings. *See* Resp. at 8–9. Knisley-Desmond

9

"filed a mandamus petition in the Second District Court of Appeal before commencing this federal action." (Doc. 18) at 2. Knisley-Desmond represents that the mandamus action is "review[ing]," "examining," or "address[ing]" the "validity" of the sanctions order entered by Judge Byrd. *See* (Doc. 19-1) at 14; (Doc. 21-1) at 29, 36. In fact, Knisley-Desmond treats this action as a mirror to the mandamus action, describing the scope of both in the same terms. *See* (Doc. 19-1) at 14; (Doc. 21-1) at 29, 36. Whether the mandamus action is an improper attempt to obtain a second appeal of the sanctions order is for the Second District Court of Appeal to decide. For *Younger* purposes, Knisley-Desmond has, in essence, found a way to initiate state court appellate review of same order that he asks me to effectively nullify. Thus, resolution of this action would interfere with the Second District Court of Appeal's ability to cleanly decide the propriety of the sanctions order and whether to grant relief from it. *See Tillman v. Simon*, No. 1:17–CV–204–MW–GRJ, 2018 WL 653794, at *3 (N.D. Fla. Jan. 8, 2018), *report and recommendation adopted*, No. 1:17CV204-MW/GRJ, 2018 WL 652820 (N.D. Fla. Jan. 31, 2018) (finding that *Younger* barred an action challenging a district court's judgment while that judgment was the subject of an ongoing appeal).

For the second *Middlesex* factor, as explained above, a state court's power to sanction and enforce its own sanctions implicates important state interests.

10

Regarding the third *Middlesex* factor, Knisley-Desmond argues that there is no adequate opportunity to raise his federal access claims because the ePortal blocks his ability to file. *See* Resp. at 11. This argument focuses on his inability to file at the trial level in Pasco County and ignores that he was able to file a mandamus petition with the Second District Court of Appeal. He does not argue that the Second District Court of Appeal is an inadequate forum or that he is otherwise unable to raise these claims there. There are no reasons to doubt that Knisley-Desmond has an adequate opportunity to raise his claims.

Knisley-Desmond does not contend that any of the extraordinary circumstances that warrant refusing to abstain apply here. Nor do I see any evidence of such circumstances. Thus, in addition to the bar from *Rooker-Feldman*, *Younger* abstention is warranted. *See Macleod*, 730 F. App'x at 848 (affirming dismissal under *Rooker-Feldman* and *Younger* of a pro se litigant's action that "essentially ask[ed] the federal courts to review" a state court order labeling the plaintiff a vexatious litigant and barring him from further pro se filings).

Knisley-Desmond asks that, rather than dismiss his action, I issue a narrowly tailored stay or merely deny the specific remedy that "intrude[s] on state-court functions." *See* Resp. at 13. I decline to do so because the core of his action runs directly into both doctrines. There is no effective way to narrowly

11

tailor a stay or pare back the action to only remedies that are allowed—there are none.

Accordingly, the following is **ORDERED**:

1. This action is **DISMISSED without prejudice** for lack of subject matter jurisdiction under *Rooker-Feldman* and based on abstention under *Younger*.

2. The Clerk is directed to **ENTER JUDGMENT**, which shall read, "This case is dismissed without prejudice."

3. The Clerk is further directed to **TERMINATE** all deadlines, pending motions, and hearings, and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on May 27, 2026.

Kathryn Kimball Mizelle
United States District Judge